## Kiebler's Appeal

*Charles A. Wallace* of *Brown & Wallace*, for appellant.
*Thomas W. Dickey*, contra.

CHAMBERS, P. J., December 9, 1937.—This matter was heard before the court in banc on appeal of Louis R. Kiebler from the action of the Board of School Directors of Plaingrove Township, this county, in the termination of his contract as professional employe of said board entered into May 5, 1937, in compliance with the Act of Assembly of April 6, 1937, P. L. 213.

The appellant did not ask for a hearing de novo and the case comes to us therefore on the record as made up.

In this situation we deem it advisable to give a short history of the matter.

Louis Kiebler, the appellant, was employed as a teacher by the Board of School Directors of Plaingrove Township, for the school year 1935-36 and again for the school year 1936-37. The contract was in writing in conformity with the then existing school law. The appellant entered upon his duties and taught the seventh- and eighth-grade pupils in said district during these two years. On February 20, 1937, the board of school directors served upon the appellant a notice in writing that his contract

would be terminated at the end of the current term, to wit, on April 23, 1937. This was in conformity with the act of assembly then in force.

On April 6, 1937, an act of the General Assembly became effective which, in section 1205 thereof provides, among other things, as follows:

"Each board of school directors or board of public education in all school districts in this Commonwealth shall, within thirty days after the effective date of this act, enter into contract, in writing, with all professional employes now employed by them, and thereafter shall in the same manner enter into contracts, in writing, with each professional employe at or before the time the employe first enters the service of the district. Said contracts shall contain only the following". (Then follows a form of the contract to be used.)

It is further provided in said section 1205 (*a*) as follows:

"The only valid causes for termination of a contract in accordance with the provisions of this section shall be— Immorality, incompetency, intemperance, cruelty, wilful and persistent negligence, mental derangement, persistent and wilful violation of the school laws of this Commonwealth on the part of the professional employe, or substantial decrease in the number of pupils or students due to natural causes."

Clause (*d*) of the same section provides the procedure to be followed when the board of school directors desires to terminate such contract.

On May 5, 1937, about two weeks after the close of the school year, the board of school directors entered into a contract with appellant in the form provided in section 1205 of the said Act of April 6, 1937, and on June 21, 1937, the board of school directors gave appellant a notice in writing that his contract had been terminated, and further notifying him that he would be heard on the matter if, within 10 days, he would make such request of the board in writing. The appellant requested such hearing

as well as a detailed statement of the charges against him. In reply to this request appellant received the following:

"Exhibit C"

"Re: Notice of

"THE TERMINATION OF CONTRACT TO TEACHER

Office of the
"SCHOOL DISTRICT OF PLAINGROVE TOWNSHIP OF LAWRENCE COUNTY, PA.

"C. B. McCommon, Secretary.

Volant, Pa., July 20, 1937.

"To Louis R. Kiebler,
"Slippery Rock, Penna.,
"R. D. No. 4.

"In compliance with the provisions of Act of April 6, 1937, and as per request of your counsel, we desire to give you a detailed written statement of the charges upon which your dismissal or refusal of reëlection as a teacher is based, viz.:

"1. You have wilfully and persistently been negligent in not making the monthly weight chart as required by the Department of Health of the Commonwealth of Pennsylvania.

"2. That during all of your teachership you have persistently failed to maintain proper discipline among your pupils.

"3. That in a comparison of grades seven and eight in other schools in Lawrence County, Pennsylvania, similar to our school, we find that through your incompetency the grades of the pupils of said grades in our school are much lower than the grades of the pupils in similar classes in the other schools, this comparison being based on standardized tests given by the County Superintendent of Schools.

"4. We find that through your incompetency, the general grades of pupils in grades seven and eight in our school under your instruction as compared with the grades of pupils under teachers who preceded you are much lower, this is with reference to the standardized tests.

"5. We find that your use of English in the presence of the pupils has been poor and incorrect and ungrammatical.

"C. B. McCOMMON,
"*Secretary.*"

On July 31, 1937, a hearing was held and testimony taken, which has been reduced to writing and is a part of the record before us. On the testimony thus taken the board presumably made a finding terminating the contract, although the finding as such does not appear in the record.

On September 4, 1937, Louis R. Kiebler filed in this court an appeal as provided for in clause (*j*) of the said section 1205 of said act.

While said clause (*j*) gives to the dismissed employe the right to have a hearing de novo before the court on such appeal, no such request was made by this appellant and the case is therefore before us on the record as made up.

At the hearing on the appeal the appellant took two positions:

1. That the contract could not be terminated by reason of anything that transpired before its execution.

2. That the evidence produced did not warrant the termination of the contract for cause.

The case presents a very interesting question, particularly as presented by appellant in his first position.

Notwithstanding the fact that the board had, on February 25, 1937, determined to dispense with the services of Mr. Kiebler, and had given him written notice of that determination on that date, on May 5, 1937, about two weeks after the close of the school year, it entered into a contract with him to teach in their school for a term of eight months for an annual compensation of $800, and

then on June 21, 1937, before he had performed any services under this contract, he is notified that the contract is terminated, and when so requested, it assigns as reasons therefor, his incompetence and negligence.

It is the contention of the appellant that this position is inconsistent and illegal; that it having entered into a contract with him he could not be discharged except for reasons arising thereafter. Much could be said for this position, and if the parties hereto were private individuals, we would have no hesitation in holding with appellant. Such, however, is not the case. As was said in De Vere Ford v. Kendall Borough School Dist., 121 Pa. 543:

". . . a school district is but an agent of the commonwealth, and as such a quasi-corporation for the sole purpose of administering the commonwealth's system of public education".

We have, therefore, a different situation than where two individuals undertake to enter into a contract.

It is the position of the school district that the Act of April 6, 1937, made it mandatory upon the board to enter into this contract, and with this position we are inclined to agree. The opinion of the Attorney General, rendered by him to Hon. Lester K. Ade, Superintendent of Public Instruction, Termination of Teachers' Contracts, 29 D. & C. 456, tends to support this position, although it does not rule the exact question we have here. The exact question, however, was before Wilson, P. J., of Butler County, in case of Crawford v. Adams Township School District, a case not reported, in which he holds that the Act of April 6, 1937, is mandatory and that under its provisions all boards of school directors must enter into contracts with teachers in their employ at the effective date of its passage. We are not able to see how the act can otherwise be construed. The act provides that boards of school directors: ". . . shall, within thirty days after the effective date of this act, enter into contract, in writing, with all professional employes now employed by them". It will be noted that the word "shall" is used and not may

or other discretionary word. It is a word of command and it is issued by the Commonwealth itself to its agent, the school district: DeVere Ford v. Kendall Borough School Dist., supra, and for that reason would have a higher mandate in our opinion than would attach to the word itself when used in the ordinary statute.

We are of opinion, therefore, that it was mandatory upon the board to enter into this contract, and appéllant could have compelled its execution upon refusal on the part of the board.

This construction of the act, however, does not dispose of our difficulty. The appellant raises the further question as to the right of the board to terminate the contract for any cause not arising after its execution. Appellant contends that the fair construction of this act is that any person in the employ of any school district on April 6, 1937, was to be taken to be a worthy employe and was not to have his contract terminated for anything that occurred prior to that time. There is force in this contention. It would seem rather ridiculous to compel a board of school directors to enter into a contract with an employe and then to permit the board to immediately annul the contract for reasons which existed at the time of its execution. On the other hand we do not believe that it was the intention of the legislature to compel a school district to continue the services of a teacher who had shown himself to be thoroughly incompetent. In this perplexing situation we are inclined to take the position, that while the act is mandatory and compels the board to enter into a contract with every teacher employed at the effective date of the act, the board is not thereby bound to continue in service one who has theretofore shown himself utterly unfit. Prior to the Act of April 6, 1937, a board of school directors could terminate a contract with a teacher in two ways: By giving notice to the teacher a sufficient length of time before the close of the school term without assigning any cause therefor, or by preferring proper charges during the term and establishing them. It is the

contention of the board in this case that the appellant is incompetent. If that be true it had the right to bring charges against him and remove him during the term. This it did not choose to do, but did serve notice upon him that his services would end at the termination of the school year. We deem this a justifiable course. The board no doubt felt that the best interests of the school district would be served by permitting the appellant to finish his term and then sever the relationship than by the disruption which would be caused by attempting to discharge for cause during the term.

In this situation they find themselves confronted with the Act of April 6, 1937, and forced to enter into a contract with a teacher whom they have thought to be unfit to continue longer in their employ but whom they have not yet ousted. In view of this we are of opinion that they would be justified in bringing charges and terminating the contract for just cause.

This brings us then to a consideration of appellant's second contention. Is the evidence sufficient to warrant the action of the board? The Act of April 6, 1937, permits the employe aggrieved to have a hearing de novo before the court. In making this provision the legislature no doubt considered that the hearings before boards of school directors unfamiliar with judicial proceedings would often not be as full and complete as might be desired and that the evidence produced would not always be such as would be approved by established rules of evidence, and for that reason reserved to such aggrieved employe the right to have the matter heard anew by the court where proper rules of procedure might be enforced.

We are of opinion that if this course had been followed here we might be in a better position to adjudicate the matter. However, no hearing de novo has been requested, and we are compelled to take the record as we find it and determine whether the action of the board was justified. This again is not an easy matter. The matters sought to be established by the board in general were, that appel-

lant did not maintain proper discipline and that the pupils under him were not making proper progress under him, as evidenced by the response his scholars made to tests given to his pupils by the county superintendent. There was also some evidence of his failing to make monthly reports of the weight of his pupils to his principal, as required by the school law, but the evidence on this matter we deem insufficient to show a "persistent and wilful violation of the school code" such as is required by the act.

We will consider therefore only the question of discipline and the progress of the scholars.

Only two witnesses were called by the board to establish the charges, W. L. Raney, the principal of the school in which appellant taught, and John C. Syling, Superintendent of Schools for Lawrence County. Appellant contends that most of the testimony of these witnesses should be disregarded for the reason that it is only opinion evidence. We are not satisfied that it should be so disregarded. I think we may regard each of these men as in the way of experts on the matters in regard to which they undertook to testify. Mr. Raney has been a school principal for nine years. Mr. Syling has been county superintendent of schools for twelve years and for eight years before that was assistant superintendent. This, we take it, would give them some right to speak with authority and the opinion of each of them would have probative value. It is true that neither of them gives much detail as to the matters upon which they base their opinions, but that does not make the evidence incompetent. If cross-examination had developed no sufficient data, that might have weakened the probative value or perhaps destroyed it, but this attempt was not made. Mr. Raney testifies that as principal of the school he visited the room of appellant three or four times a week during the course of his employment, and that from the knowledge gained by his observations he came to the conclusion that the appellant was a poor disciplinarian. In corroboration of his testimony he offers rating scales kept by him as required by

law, in which he rated appellant as a poor disciplinarian for both school terms. Under this system the principal is required to rate the teacher in one of five divisions, no. 5 being highest, 4 high, 3 middle, 2 low, 1 lowest. The first year he gives appellant a rating of two in discipline. In the second year a rating of one. It may be remarked that during the first year, out of 19 items upon which the principal is required to rate the teacher, in only two of them is he rated above medium (those two being attitude toward suggestions and coöperation), and six below medium. In the second year he has no rating above medium and three below. While we must concede that these ratings would not be conclusive of appellant's ability, yet, kept as they are by legal requirements, we consider them as having probative value. Mr. Raney further testified that the eighth-grade pupils who came into high school from appellant's room at the end of the school year of 1935-36 did not come up to the standard of eighth-grade pupils of former years.

Mr. Syling testified that as county superintendent, and as assistant county superintendent, it had been his duty to visit the schools of the county; that he had made an average of 300 visits in a year; that from the experience thus gained he could enter a classroom and in a few minutes determine what control a teacher was exercising over his pupils. He further testified that on his first visit to the room over which Mr. Kiebler was presiding, he came to the conclusion that his work was not satisfactory. We quote the following from his testimony:

"Q. You visited once in October or November and you came to the conclusion that Mr. Kiebler was not placed in the right place?

"A. Yes.

"Q. What do you base that on?

"A. When I enter a school room I base it on the interest that is manifested by the pupils. The pupils when I am in the room may be very busy seemingly, but after years of observation we can tell pretty definitely how much

interest is displayed, the same as a doctor will tell by feeling a pulse in a very short time how sick the patient is. I felt the first visit—of course after that I checked again with other visits."

This indicates the ability of the witness to speak with some authority. If he is not able to do this we might ask why is his office maintained? He is paid for supervising the schools of the county. He is responsible for keeping the schools up to the highest standard possible. If he would not be able to appraise the worth of a teacher and speak with authority on that teacher's qualifications, who would?

Mr. Syling further testifies that the grades made by the pupils in the tests which he submitted to them are below what he would expect from scholars in this district, and that this is due in his opinion to the poor work of the appellant.

As we said earlier in the opinion, the exact findings which the board made on this testimony are not before us, but we are of opinion that the testimony offered was sufficient, if believed, to permit the board to find either that the teacher was incompetent or wilfully and persistently negligent, either of which would warrant his dismissal.

A more complete and full hearing before the court de novo might have led us to a different conclusion, or it might have strengthened the case of the board, and we are of opinion that when cases of this character arise that is the better procedure. These cases are important to both the teacher and to the school district, and merit the development of all material facts in order that mistakes may not be made and that justice may be done to all parties.

We are satisfied that the Act of April 6, 1937, was designed to make competent teachers feel secure in their employment, but not intended to fetter upon school boards incompetent, or even mediocre, teachers, and reserved to such boards the right to get rid of such teachers who, from either incompetency or neglect, fail to keep their

schools up to the standard which our large expenditure of taxes upon this institution warrants.

An examination of the entire record in this case leads us to the conclusion that the action of the school board was warranted and should not be disturbed, and in accordance with this opinion we make the following

### ˙ Order

Now, December 9, 1937, upon hearing of the petition in this case and argument of counsel, it is ordered that the action of the board of school directors be affirmed and that the said Louis R. Kiebler be discharged from his employment.

Braham, J., sat with President Judge Chambers.